T.C. Memo. 1996-401


UNITED STATES TAX COURT


WAYNE CALDWELL ESCROW PARTNERSHIP, ROY DIMON, JOHN AND
MARY SCHUENEMANN, JOSEPH AND LOUISE O'NEAL, CHARLES AND
LOVETTA NIVEN, CHARLTON AND CYNTHIA THOMAS, PARTNERS
OTHER THAN THE TAX MATTERS PARTNER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8043-93.          Filed August 27, 1996.


        James L. Kennedy, for petitioners.

        William A. Roberts and Steven W. Weinstein, for

intervening partner Bill Denny.

        Kemble White, for participating partner Wayne H.

Caldwell (on brief only).

        John P. Haddock, Jr., participating partner, pro se.

        James R. Turton, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHALEN, Judge:  This case is before the Court to decide cross-motions to dismiss for lack of jurisdiction. Respondent's motion argues that the instant petition for readjustment must be dismissed because petitioners failed to file the petition within the time required by section 6226(b).  All section references are to the Internal Revenue Code as amended.  Petitioners' motion argues that the petition must be dismissed because the notice of final partnership administrative adjustment (notice of FPAA) was not mailed to the tax matters partner, as required by section 6225(a), and was not mailed to notice partners, as required by section 6223(a)(2), within the time required by section 6223(d)(2).  Petitioners argue that, as a result of respondent's failure to mail the notice of FPAA to notice partners, all of the partnership items of the subject partnership were converted into nonpartnership items, pursuant to sections 6223(e) and 6231(b)(1)(D) and cannot be readjusted in this partnership proceeding.

FINDINGS OF FACT

Some of the facts have been stipulated by the parties. The stipulation of facts filed by the parties and the exhibits attached thereto are incorporated herein by this

reference. We note that the stipulation of facts was not signed by or on behalf of participating partners Wayne H. Caldwell or John P. Haddock, Jr. We also note that, at trial, the parties orally agreed that a document entitled "Stipulation of Facts Pursuant to Rule 122" should be included in the record of this case. Hereinafter, we refer to that document as the Rule 122 stipulation.

An evidentiary hearing was held on the subject cross-motions to dismiss, and the parties presented testimonial and documentary evidence in support of their motions. Thereafter, the parties filed post-hearing briefs. The following findings of fact are based upon the record of the evidentiary hearing, the stipulation of facts, and the Rule 122 stipulation filed by the parties.

At the time the petition was filed, the Wayne Caldwell Escrow Partnership (partnership) was a general partnership organized and existing under the laws of the State of Texas. The partnership's mailing address was in Dallas, Texas, at the office address of one of its partners, Mr. Wayne H. Caldwell, who was also a certified public accountant.

The partnership had been formed in 1983 by Mr. Caldwell for the purpose of leasing and distributing laser disks and copies of movies. The activities of the

partnership were governed by a partnership agreement. According to paragraph 3 of the partnership agreement, there were 27 persons who were partners as of the end of 1983. The following is a list of partners, their cash contributions, and their percentage interests in the partnership, as set forth in the partnership agreement:

| Partner | Cash | Percent Interest |
|---|---|---|
| Paul Abney | $5,800 | 2.6925 |
| Weldon Tillery | 14,500 | 6.7312 |
| John Haddock | 5,800 | 2.6925 |
| Bill Denny | 21,750 | 10.0968 |
| Charles Niven | 7,250 | 3.3656 |
| Roy Dimon | 14,500 | 6.7312 |
| Bob Jondle | 10,000 | 4.6422 |
| Sherrill Stone | 10,015 | 4.6449 |
| Janice Bigbee | 10,000 | 4.6422 |
| Nugent Oliphant | 2,000 | .9284 |
| Pride Maintenance, Inc. | 1,250 | .5803 |
| John Schueneman | 6,000 | 2.7853 |
| Gene Nickerson | 2,800 | 1.2998 |
| Marilyn Clayton | 14,500 | 6.7312 |
| Al Slack | 10,000 | 4.6422 |
| Joe Oneal [sic] | 14,500 | 6.7312 |
| Wayne H. Caldwell | 14,500 | 6.7312 |
| Ray Woody | 1,250 | .5803 |
| Charlton Thomas | 7,500 | 3.4817 |
| Steve Walker | 3,500 | 1.6248 |
| Gerald Ano | 5,500 | 2.5532 |
| J. P. Carney | 7,500 | 3.4817 |
| Bruce Graves | 2,000 | .9284 |
| Jimmy Miller | 1,500 | .6963 |
| B. F. Sammons | 3,000 | 1.3927 |
| Nolan Haines | 14,500 | 6.7312 |
| Don Moore | 4,000 | 1.8569 |
| Totals | 215,415 | 99.9959 |

On the last page of the version of the partnership agreement contained in the record of this case, there

is the statement "Executed this  16th  day of  December ,
1983", followed by nine signatures, eight of which appear
to be the signatures of persons who are listed above as
partners, and one of which is struck through with a line.

The partnership agreement states:  "The Managing
Partner shall be responsible for executing all legal
documents, * * * preparation of the partnership tax return,
[and] mailing of K-1's to individual partners".  The
agreement is blank in the space provided for the name of
the managing partner.  The partnership agreement does not
otherwise state how tax matters are to be handled on behalf
of the partnership.

Paragraph 15 of the partnership agreement governs
voting and states as follows:

> The partners shall vote on all items of
> importance.  Included in this area would be
> approval of advertising layouts, art work for
> product package, cable or television contracts,
> etc.  Approval of such items will require a two-
> third's (2/3's) majority.  Approval of major
> monetary disbursements, (other than incidental
> payments of bookkeeping fees, tax return
> preparation, or copy and mailing cost, and
> managing partner compensation) shall be by a
> unanimous vote.  For example, an additional
> payment to the distributor for advertising or
> special promotion would require a unanimous vote
> by all members.  Assessments can be made only by
> unanimous vote.  Voting may be via telephone with
> later written confirmation.

The partnership filed two Forms 1065, U.S. Partnership Return of Income, for taxable year 1983. The first return, dated March 16, 1984, is signed by Mr. Caldwell in the space provided for "Signature of general partner". The second return, dated April 9, 1984, is blank in the space provided for the signature of the general partner, but is signed by Mr. Caldwell in the space provided for "Preparer's signature". The two returns appear to be identical, except for the different placement of Mr. Caldwell's signature. Each return claims an ordinary loss of $28,429, which is composed of gross receipts of $58, a deduction for "lease rental" of $2,087, and a deduction for "distribution expense" of $26,400. Attached to both returns as "Schedule B" is a document entitled "Election to Pass Investment Tax Credit From Lessor To Lessee". According to that document, the lessor of a laser disk, worth $8,436,271, agreed to transfer the investment credit on the laser disk to the partnership.

There are 27 Schedules K-1, Partner's Share of Income, Credits, Deductions, Etc., attached to the partnership's 1983 return. The ordinary loss of $28,429 reported by the partnership is allocated among the 27 partners. In addition, the alleged fair market value of the laser disk, $8,436,271, is allocated among the partners in accordance

with each partner's percentage interest in the partnership, and is treated as "Property Eligible for Investment Credit."

The Form 1065, U.S. Partnership Return of Income, that was promulgated by the Commissioner for 1983 did not contain a space for the designation of the tax matters partner, and nothing on, or attached to, either of the returns filed on behalf of the partnership for 1983 expressly identifies Mr. Caldwell or anyone else as the tax matters partner. The document attached to both returns as "Schedule B", entitled "Election to Pass Investment Tax Credit from Lessor to Lessee", was executed on the partnership's behalf by Mr. Caldwell as "Managing Partner".

On or about March 28, 1985, respondent initiated an examination of the partnership's 1983 return. A representative of respondent sent a letter to Mr. Caldwell dated March 28, 1985, which states: "This is your notice of the beginning of an administrative proceeding at the partnership level with respect to partnership items." The letter further states: "An appointment has been scheduled for 9:00 a.m., May 2, 1985, at 5952 Royal Lane, #177." The letter concludes with the following:

Documents Requested:

1. One copy of the video is required, two copies if available.

2. One copy of partnership agreement.

3. One copy of all contracts signed and any agreements signed.

4. One copy of any lease agreements signed.

5. One copy of all cancelled checks (front & back), deposit slips and bank statements for year under examination.

6. One copy of the actual production cost of the video.

7. One copy of all correspondence with National Video or its associates.

Mr. Caldwell informed another partner, Mr. Bill Denny, of the audit shortly after the date of that notice.

Based upon the examination of the partnership's 1983 return, respondent's District Director for the Dallas District sent a letter dated June 2, 1986, to "Wayne H. Caldwell, Tax Matters Partner", informing the partnership of certain proposed adjustments, and of the partnership's right to protest the adjustments to respondent's Appeals Office. On August 1, 1986, Mr. Caldwell responded to the letter from the District Director by transmitting his "formal protest" to the proposed adjustments. In his

protest letter, Mr. Caldwell stated that he was appealing on behalf of "Wayne H. Caldwell only".

On November 17, 1986, an Appeals officer in Dallas, Texas, Mr. Dan Norstrud, sent a letter to Mr. Caldwell, addressing him as "Tax Matters Partner". Mr. Norstrud's letter states that if Mr. Caldwell was "not appealing the adjustments to the partnership but some possible future adjustment to your personal return", then "your appeal is premature and based on the new TEFRA laws is inappropriate." Mr. Norstrud's letter further informs Mr. Caldwell that if he wished to appeal the proposed adjustments on behalf of the partnership, then he must supply the originals or copies of the documents that had been requested during the examination. Mr. Norstrud's letter warns Mr. Caldwell that if he did not respond and provide the requested documents, "including a copy or original of the asset (Laser Disk)", then a notice of FPAA would be issued. Mr. Norstrud's letter also informs Mr. Caldwell of the time limits for contesting a notice of FPAA in court.

On December 3, 1986, Mr. Caldwell wrote to Mr. Norstrud and referred to himself as the "Tax

Matters Partner Wayne Caldwell, Escrow".  Mr. Caldwell's letter states as follows:

> Dear Mr. Norstrud,
>
> I am sorry that the protest letter you received from me was inappropriate, because I was writing it on behalf of the Partnership as the tax matters partner.
>
> I will write another protest letter that will clearly show and indicate that it is for the partnership "Wayne Caldwell, Escrow." and send it to you as soon as possible.
>
> I am enclosing a copy of your letter, so we will be sure that we have the right entity that is to be handled.
>
> Sincerely yours,
> /s Wayne H. Caldwell
> Wayne H. Caldwell,
> Tax Matters Partner
> Wayne Caldwell, Escrow
> 5952 Royal Lane, # 117
> Dallas, Texas 75230

On January 7, 1987, prior to receiving a revised protest letter from Mr. Caldwell, Mr. Norstrud received an executed Form 872-O, Special Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership, on behalf of the partnership.  Mr. Caldwell had signed the form in the space reserved for the tax matters partner. Following his signature, Mr. Caldwell included the title "Managing Partner".  Mr. Norstrud signed the extension on behalf of respondent.  No other partner executed a Form 872-O extending the period of limitations for 1983.  The Form 872-O executed by Mr. Caldwell extended the period of limitations on assessment as follows:

(1) The amount of any Federal income tax with respect to any person on any partnership items(s) for the above named partnership for the period(s) ended  December 31, 1983  may be assessed on or before the 90th (ninetieth) day after: (a) the Internal Revenue Service office considering the case receives Form 872-N, Notice of Termination of Special Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership, from the partnership; or (b) the Internal Revenue Service mails Form 872-N to the partnership.  If a notice of Final Partnership Administrative Adjustment is sent to the part- nership, the time for assessing the tax for the period(s) stated in the notice of Final Partnership Adjustment will not end until 1 year after the date on which the determination of the partnership items becomes final.

Mr. Caldwell sent a revised protest letter that was dated January 21, 1987, and signed on January 31, 1987. In the letter, Mr. Caldwell identifies himself as "Tax Matters Partner".

Mr. Caldwell did not provide the documents that had been requested by Mr. Norstrud, including a copy of the video.  As a result, respondent's Appeals Office returned the case to the District Office for further development and summons enforcement.

At a summons enforcement hearing before a United States District Court, Mr. Caldwell was present as a party, but he did not provide the records summoned.

Mr. Caldwell's uncooperativeness led to a contempt hearing. The record of this case does not reveal the outcome of the summons enforcement or contempt proceeding.

On January 9, 1989, Revenue Agent James Schieck met with Mr. Caldwell. Mr. Caldwell would not allow Agent Schieck to copy the partnership agreement, but he did allow Agent Schieck to review it and take notes. In his notes, Agent Schieck observed that the space in the agreement reserved for the name of the managing partner was blank, and the agreement provided that all matters of importance had to be decided by a two-thirds vote of the partners.

On July 26, 1989, Agent Schieck sent a letter addressed to the partnership: "ATTN: Tax Matters Partner", in which he requested formal designation of a tax matters partner. The agent enclosed forms that could be used for that purpose, and he warned that if the partnership did not designate a tax matters partner, then respondent would designate one as provided by section 6231(a)(7). On July 27, 1989, Agent Schieck sent a letter to each of the partners of the partnership in which he also requested the designation of a tax matters partner. He enclosed therein a copy of his letter of July 26, 1989, addressed to the

"Tax Matters Partner". Agent Schieck never received a response to the letters he sent in July 1989.

Sometime in 1989, Mr. Denny received a telephone call from one of respondent's agents. The agent said that Mr. Denny was the tax matters partner because he held the largest profits interest in the partnership. However, no action was taken by respondent, Mr. Denny, or any other member of the partnership to formally designate Mr. Denny as tax matters partner.

In August 1989, Agent Schieck scheduled a conference to administratively close the partnership's case. Mr. Caldwell appeared at the conference and was accompanied by Mr. Raymond Woody, another partner. During the conference, Mr. Caldwell asked to see the credentials and delegation orders of respondent's representatives and was otherwise uncooperative. Because Mr. Caldwell had not brought the documentation that Agent Schieck had requested, the meeting was quickly concluded.

Sometime thereafter, the case was returned to respondent's Appeals Office in Dallas, Texas, and Mr. Norstrud prepared a so-called FPAA package, a group of documents, including a notice of FPAA and an explanation of adjustments, that are required under respondent's

procedures to issue a notice of FPAA to the tax matters partner and the notice partners. See generally 1 Audit, Internal Revenue Manual (CCH), sec. 4227.47, at 7233-20. In the notice of FPAA prepared by Mr. Norstrud, respondent determined that in computing the amount of property eligible for investment credit for 1983, the partnership is not entitled to take into account, as qualifying section 38 property, the alleged basis of the partnership in a video disk in the amount of $8,436,271. Mr. Norstrud transmitted the FPAA package to the Austin Compliance Center in Austin, Texas, for processing and mailing of the notice of FPAA to the tax matters partner and notice partners.

On January 28, 1991, respondent mailed duplicate original notices of FPAA that are the subject of this proceeding. One of the notices of FPAA was addressed to "Wayne H. Caldwell, Wayne H. Caldwell, Escrow". A second notice of FPAA was addressed to "Tax Matters Partner c/o Wayne H. Caldwell Escrow." Both notices were sent to "5952 Royal Lane #117, Dallas, Texas, 75230". This is the street address that was used on the partnership's 1983 returns and is the address of Mr. Caldwell's business. In this opinion, we refer to the second notice of FPAA as the generic notice of FPAA.

Both notices of FPAA were sent by certified mail. Before the letters were mailed, an employee of the Austin Compliance Center prepared a U.S. Postal Service Form 3877 and entered on that form the certified mail number and the name and address on the envelope of each of the letters. A postal employee then verified the information on Form 3877 and mailed the letters. The Form 3877 bears a U.S. Postal Service cancellation stamp which shows the date, January 28, 1991, and a U.S. Postal Service code for Austin, Texas, "78760".

On January 28, 1991, an employee of the Austin Compliance Center also sent, by certified mail, copies of the notice of FPAA to all 27 partners of the partnership, including Mr. Caldwell and Mr. Denny. Consistent with respondent's established procedures, one of respondent's employees at the Austin Compliance Center obtained a computer-generated document entitled "FPAA Certified Mail Listing A" which states that "Final Partnership Administrative Adjustment for the Year(s) indicated below have been sent to the following Taxpayers: (Postage Fee Paid by IRS)". There follows a list of the certified mail number of each notice of FPAA to be sent, together with the name, address, and Social Security number

of each addressee. In this case, the list shows that 29 notices of FPAA were mailed to the 27 partners of the partnership. In the case of two partners, the list shows that the notice of FPAA was mailed to a second address.

The last page of the FPAA Certified Mail Listing A contains the statement: "Total No. of pieces received at P.O. _29_ ." It also states "Postmaster (per name of receiving employee) _____ Date: _____ ." Following the word "Date" is a date stamp and initials. The date stamp is not fully legible, but the legible portion reads "Austin, Texas" and bears the U.S. Postal Service code "78760" and the date "January, 1991".

The Austin Compliance Center transmitted copies of the notices of FPAA that had been stamped with the date, January 28, 1991, to the Appeals Office in Dallas, Texas, along with the FPAA Certified Mail Listing A. Mr. Norstrud received those documents in due course after January 28, 1991.

At some time after January 28, 1991, Mr. Caldwell wrote to Mr. Norstrud and complained that the mailing of the notice of FPAA was "outside the statute of limitation [sic]." Mr. Caldwell's letter states as follows:

Dept. of the Treasury
Internal Revenue Service
1100 Commerce Street
Dallas, Texas 75242
Att:  Mr. D. Norstrud

Reference   (a)   Form (Letter 1827(DO))dtd. Jun 02,1986
                  Exhibit 1 (attached thereto) dated Nov.
                  14,1985 by Mike Bedford

            (b)   Form Letter 1807(DO) dated July 26,1989
                  (certified mail # P 470 982 148) enclosed
                  summary report

            (c)   Letter to District Counsel from James M.
                  Schieck dated Sept. 1, 1989

Enclosure   (1)   Form Letter 1830(AO) dtd Jan.28,1991, to
                  Wayne H. Caldwell from Jacob C. Meyer,
                  Associate Chief, Appeals.

            (2)   Letter to H. Elliot from Caldwell dtd.
                  Aug.1,1986)[sic]

Dear Mr. Norstrud,

     I am in receipt of enclosure (1) document naming you as
the person to contact for the issuing Appeals section, regarding
the disposition of matters relating to Wayne H. Caldwell, Escrow
a partnership.

     At the time of the appeal in question, I was the Tax
Matters Partner for the above partnership and the protest and
appeal (see enclosure (2)) I sent to your section was in regard
to a proposed adjustment to the Partnership tax return (Form
1065) for the year 1983.  Exhibit (1) to reference (a) set forth
certain statements and issues as the bases for the proposed
adjustments.  These allegation [sic] were in error and I was
given 60 days to protest and appeal them.

     The Statements and Issues that were protested were later
amended and changed and new ones resubmitted as a summary report
attached to reference (b).  A closing conference was scheduled
for August 28,1989, and the case was closed August 29,1989 (see
reference (c)).

     Based on the above ,it [sic] appears the enclosure (1)
letter is untimely from the appeal filed by enclosure (2) or is
an attempt to reopen the case.  The latter places this action
outside the statute of limitation [sic], and I therefore
consider this letter my Notice to you that this activity is
outside the statute of limitation [sic] and Demand that you

rescind enclosure (1) letter and cease the issuance of like letters to the other partners.

Absent a rescission, a judicial review will be requested concerning this matter.

Thank you in advance for your cooperation.

Wayne H. Caldwell
5952 Royal Lane,#117
Dallas, Texas 75230

"Enclosure (1)" to Mr. Caldwell's letter, "Form 1830(AO) dtd Jan.28, 1991, to Wayne H. Caldwell from Jacob C. Meyer, Associate Chief, Appeals", is a reference to the notice of FPAA that had been sent to Mr. Caldwell.

In an undated letter, Mr. Caldwell informed all of the partners that a notice of FPAA had been issued by the Internal Revenue Service.  Mr. Caldwell's letter to the partners states as follows:

> RE: Partnership, Wayne H. Caldwell, Escrow
> Enclosure (1): Letter to IRS from Wayne H. Caldwell
>
> Dear Partner,
> Enclosure (1) is a copy of a letter I sent to the Internal Revenue Service, Mr. Dan Norstrud, regarding a "Notice of Final Partnership Administrative Adjustment" for the Wayne H. Caldwell, Escrow Partnership.  They sent me this notice since I was the tax matters partner at the time the appeal was made back in August 1986.
>
> As I indicated in Encl. (1), the matter was closed as of August 29,1989, after the closing conference of August 28,1989, I therefore asked for a rescission of the Adjustment Notice.
>
> This office has not as yet received a rescission, and I am assuming, the Internal Revenue Service (IRS) may be continuing this matter by contacting each partner individually.  I wanted you to know what had been transmitted to the IRS at the part-

nership level regarding this matter so you would have that information available if you would be responding to them.

If you desire this office to be of further assistance, or service to you regarding this matter or any action that you may wish to take with the IRS, please send any copies of correspondence you have received from them any response you have made and one hundred dollars ($100) to open your account, and we will begin the research and will advise you of which course of action we recommend and can be ready to assist you if you so desire.

Sincerely;

Wayne H. Caldwell

On June 5, 1991, Mr. Denny also wrote to Mr. Norstrud regarding the notice of FPAA. Mr. Denny's letter states that it was his understanding that the matter had been closed on August 29, 1989, and that the period of limitations had expired. Mr. Denny's letter states as follows:

Mr. Dan Norstrud
Internal Revenue Service
1100 Commerce St
Dallas TX  75242

Re:  Partnership, Wayne H. Caldwell, Escrow

Dear Mr. Norstrud:

It is my understanding this matter was closed as of August 29, 1989. The tax return of 1983 was in question, but I am sure the statute of limitations has now expired.

I request that you send a letter of recission to the Tax Matters Partner, Mr. Wayne H. Caldwell and to me.

I have attached a copy of Mr. Caldwell's letter to you.

Sincerely

Bill R. Denny

Attached to Mr. Denny's letter is a copy of the letter Mr. Caldwell had sent to Mr. Norstrud, quoted above. The date of Mr. Denny's letter, June 5, 1991, is 128 days after the date on which respondent issued the notice of FPAA, January 28, 1991.

By letter dated June 13, 1991, Mr. Norstrud responded to Mr. Denny. Mr. Norstrud's letter states as follows:

Dear Mr. Denny:

In response to your letter dated June 5, 1991, the partnership referenced (Wayne H. Caldwell Escrow) has had a final determination made on the case. The FPAA (final part- nership administrative adjustment) has been issued. The tax matters partner has 90 days from the issuance date of the FPAA to file a petition with the Tax Court, District Court or Court of Claims if the proposed adjustments are not agreed to. If no petition is filed within the first 90 days the notice partners then have 60 days in which to file a petition with one of the Courts. If no petition is filed the case will be defaulted 150 days after issuance of the FPAA. At this time the processes will begin to have any applicable adjustments made to the partners [sic] returns.

If you have additional questions regarding the partner- ship return you should contact the tax matters partner, Mr. Caldwell.

Sincerely,

/s/ D.V. Norstrud

Daniel V. Norstrud
Appeals Officer

Another partner, Mr. Gene A. Nickerson, also wrote to respondent in response to the notice of FPAA.

Mr. Nickerson's letter, is addressed to "Dept. of the Treasury" and is undated but bears the postmark June 7, 1991.  Mr. Nickerson's letter states as follows:

    Dept. of the Treasury
    Internal Revenue Service
    1100 Commerce Street
    Dallas, Texas 75242

    References    (1):Form Letter 1830(AO) dtd Jan.28,1991, to Gene
                  A. Nickerson from Jacob C. Meyer, Associate Chief,
                  Appeals

    Enclosure     (1):Letter to Don Northstud, [sic] from Wayne H.
                  Caldwell re disposition of matters relating to
                  Wayne H. Caldwell, Escrow a partnership.

    Dear Sir,

    I am in receipt of Reference (1), and Enclosure (1) is correspon-
    dence I have received from the tax matters partner which he sent
    to the Internal Revenue Service regarding the Wayne H. Caldwell,
    Escrow partnership tax adjustment.

    It is my understanding that this matter has been disposed of at
    the Partnership level and there is no need of anything else from
    the individual partners.

    If I can be of any further assistance please advise.

                                  Sincerely;


                                  /s Gene Nickerson

                                  Gene A. Nickerson


Attached to Mr. Nickerson's letter is a copy of the letter that Mr. Caldwell had sent to Mr. Norstrud, quoted above. We note that the reference to "Form Letter 1830(AO) dtd Jan.28,1991, to Gene A. Nickerson from Jacob C. Meyer, Associate Chief, Appeals" appears to be a reference to the notice of FPAA.

Mr. Norstrud received Mr. Nickerson's letter on June 11, 1991, and replied to it on June 13, 1991. Mr. Norstrud's reply to Mr. Nickerson is similar to the letter he sent to Mr. Denny, quoted above. It explains that a notice of FPAA had been issued and details the limitations periods for filing "a petition with the Tax Court, District Court or Court of Claims".

No petition for readjustment of the partnership items that were adjusted by respondent in the notice of FPAA mailed to the tax matters partner on January 28, 1991, was filed by the tax matters partner within 90 days after January 28, 1991, nor was a petition for readjustment filed by any other partner within 150 days, after January 28, 1991. The petition for readjustment at issue in this case was not filed until April 23, 1993, 816 days after the mailing of the notice of FPAA. It was filed by five partners other than the tax matters partner. The names of those partners are set forth in the caption of this case, and they are referred to herein as petitioners.

On March 7, 1994, Mr. Caldwell submitted a Notice of Election to Participate pursuant to Rule 245(b) of the Tax Court Rules of Practice and Procedure. All Rule references are to the Tax Court Rules of Practice and Procedure. By Order dated June 30, 1994, the Court granted leave and

filed the motion. Mr. Caldwell thereby joined this proceeding as a participating partner. On July 27, 1994, Mr. John P. Haddock, Jr., also submitted a Notice of Election to Participate. The Court granted leave and filed the election on the same date. On August 1, 1994, Mr. Denny filed a Motion for Leave to File Notice of Election to Intervene pursuant to Rule 245(a). By Order dated November 3, 1994, the Court granted Mr. Denny's motion, and he intervened in this proceeding. In acting on Mr. Denny's motion, the Court accepted Mr. Denny's representation that he is the tax matters partner. The Court did not make a determination to that effect.

## OPINION

The Wayne Caldwell Escrow Partnership is subject to the unified partnership audit and litigation procedures set forth in sections 6221 through 6231. The petition for readjustment, filed by five partners other than the tax matters partner, asks the Court to readjust partnership items from the partnership for taxable year 1983.

In general, the phrase "partnership item" means any item required to be taken into account under the Internal Revenue Code, including the partnership's income, gain, loss, deduction, or credit, to the extent that regulations

provide that such an item is more appropriately determined at the partnership level than at the partner level. Sec. 6231(a)(3); sec. 301.6231(a)(3)-1, Proced. & Admin. Regs. The phrase "nonpartnership item" means an item which is not a partnership item. Sec. 6231(a)(4).

The jurisdiction of this Court to readjust partnership items depends upon the mailing of a valid notice of FPAA by the Commissioner to the tax matters partner and the filing of a timely petition for readjustment by the tax matters partner or by a notice partner with an interest in the outcome. Sec. 6226(a) and (b); Rule 240(c); Seneca, Ltd. v. Commissioner, 92 T.C. 363, 365 (1989), affd. without published opinion 899 F.2d 1225 (9th Cir. 1990). The mailing of a valid notice of FPAA by the Commissioner to the tax matters partner triggers the time period for filing a petition for readjustment by either the tax matters partner or a notice partner under section 6226(a) and (b) and is a jurisdictional prerequisite to the commencement of a partnership action. Sec. 6226(a); Rule 240(c); Maxwell v. Commissioner, 87 T.C. 783, 788-789 (1986).

The tax matters partner has 90 days after the Commissioner mails a valid notice of FPAA to the tax matters partner in which to file a petition for readjustment in this Court, in the District Court in which the

partnership's principal place of business is located, or in the Court of Federal Claims. Sec. 6226(a). If the tax matters partner fails to do so, any notice partner who has an interest in the outcome has 60 additional days in which to file such a petition. Sec. 6226(b)(1). If the petition for readjustment is not filed by the tax matters partner within 90 days or by a notice partner within 60 days after the expiration of the 90-day period, as required by section 6226, then this Court lacks jurisdiction to readjust any of the adjustments determined by respondent in the notice of FPAA, and the petition must be dismissed. E.g., Triangle Investors Ltd. Partnership v. Commissioner, 95 T.C. 610 (1990); Genesis Oil & Gas, Ltd. v. Commissioner, 93 T.C. 562, 563-566 (1989).

In the event that a court lacks jurisdiction to consider a petition for readjustment because it was filed by the tax matters partner beyond the filing deadline of section 6226(a), then the court also lacks jurisdiction to consider whether the notice of FPAA was issued beyond the period of limitations for making assessments, set forth in section 6229(a). Genesis Oil & Gas Ltd. v. Commissioner, supra at 564. This is true because the issuance of a notice of FPAA beyond the period of limitations does not affect its validity. Id. Rather, the untimeliness of the

notice of FPAA is a defense in bar that can be waived and is not a plea to the jurisdiction of the Court. <u>Wind Energy Technology Associates III v. Commissioner</u>, 94 T.C. 787, 789 (1990); <u>Genesis Oil & Gas, Ltd. v. Commissioner</u>, <u>supra</u> at 564; see Rule 39; <u>Crowell v. Commissioner</u>, 102 T.C. 683, 693 (1994); <u>Columbia Building, Ltd. v. Commissioner</u>, 98 T.C. 607, 611 (1992).

In addition to the time limits for filing a petition for readjustment, section 6226(d) provides that no partner is eligible to file a petition for readjustment or to be a party to such action unless the partner has an interest in the outcome. Section 6226(d) provides as follows:

> SEC. 6226(d) Partner Must Have Interest in Outcome.--
>
> (1) In order to be party to action.-- Subsection (c) shall not apply to a partner after the day on which--
>
> > (A) the partnership items of such partner for the partnership taxable year became nonpartnership items by reason of 1 or more of the events described in subsection (b) of section 6231, or
> >
> > (B) the period within which any tax attributable to such partnership items may be assessed against that partner expired.
>
> (2) To file petition.--No partner may file a readjustment petition under subsection (b) unless such partner would (after the application of

paragraph (1) of this subsection) be treated as a party to the proceeding.

The above provision is an integral part of the action described by section 6226(b).  See <u>Amesbury Apts., Ltd. v. Commissioner</u>, 95 T.C. 227 (1990); <u>Georgetown Petroleum-Edith Forrest v. Commissioner</u>, T.C. Memo. 1994-13; and <u>Madison Recycling Associates v. Commissioner</u>, T.C. Memo. 1992-605, in which the petitions for readjustment were filed by partners other than the tax matters partner, and the Court considered and rejected the partners' contention that assessment of the tax on the subject partnership items was barred under the period of limitations on assessment.

While an improper petition for readjustment under section 6226 does not convey jurisdiction to readjust the adjustments determined in the notice of FPAA, it may permit the Court to determine the validity of the notice of FPAA, and if the notice of FPAA is invalid, to dismiss the case on that ground.  <u>Triangle Investors Ltd. Partnership v. Commissioner</u>, <u>supra</u> at 613; <u>Genesis Oil & Gas, Ltd. v. Commissioner</u>, <u>supra</u> at 564; see <u>Holstein ET IV, Ltd. v. Commissioner</u>, T.C. Memo. 1992-716; cf. <u>Frazell v. Commissioner</u>, 88 T.C. 1405 (1987).  In that event, the Commissioner is foreclosed from assessing a deficiency in tax, under normal circumstances, until a valid notice of

FPAA is issued.  Genesis Oil & Gas, Ltd. v. Commissioner, supra.

In order to be valid, a notice of FPAA must provide adequate or minimal notice that the Commissioner has finally determined adjustments to the partnership return. Triangle Investors Ltd. Partnership v. Commissioner, supra at 613; Chomp Associates v. Commissioner, 91 T.C. 1069, 1073-1075 (1988); Clovis I v. Commissioner, 88 T.C. 980, 982 (1987).  The validity of a notice of FPAA that has been properly mailed is not contingent upon actual receipt by either the tax matters partner or a notice partner. Crowell v. Commissioner, supra at 692; cf. Yusko v. Commissioner, 89 T.C. 806, 810 (1987).

The parties to this case contend that the subject petition for readjustment must be dismissed by the Court for lack of jurisdiction.  Respondent's motion to dismiss is based upon the fact that the petition for readjustment was filed by partners other than the tax matters partner more than 150 days after the date on which the notice of FPAA was issued to the tax matters partner, and, thus, was filed beyond the jurisdictional time limit for such a petition, as set forth in section 6226(b)(1).  Respondent does not seek dismissal of the instant petition on the ground that petitioners do not have an interest in the

outcome of the proceeding, as defined by section 6226(d).
In this connection, we note that respondent denies that the
period of limitations expired before she mailed the notice
of FPAA to the tax matters partner and denies that
petitioners' partnership items became nonpartnership items.
Sec. 6226(d)(1).

Respondent argues that, even if the subject notice
of FPAA was mailed after the expiration of the period of
limitations on assessments set forth in section 6229, the
petition must be dismissed for lack of jurisdiction because
it was not filed within the time permitted by section 6226
(b).  In this regard, respondent contends that this case
is governed by Genesis Oil & Gas, Ltd. v. Commissioner,
93 T.C. 562 (1989), in which we dismissed a petition for
readjustment for lack of jurisdiction because it had been
mailed to the Court after the filing deadline provided in
section 6226.  In that case, as mentioned above, we held
that we did not have jurisdiction to consider whether the
notice of FPAA had been issued beyond the period of
limitations on assessment set forth in section 6229.  Id.
at 565-566.

Petitioners' motion to dismiss the instant petition is
based upon the allegation that respondent has not met her
burden of proving that the notice of FPAA was mailed to the

tax matters partner or to any other partner, or, if it was mailed, it was not mailed within the time required by section 6223(d)(2) because it was not mailed prior to expiration of the period of limitations on assessment prescribed by section 6229(a).  The thrust of petitioners' argument is set forth in the following passage taken from their post-trial brief:

> Therefore, when the FPAA is late, it, by definition, violates the requirements of Code §6223(d)(2).  Of course, it is even worse if the FPAA was never mailed to the Tax Matters Partner or the notice partners.
>
> As a result, Petitioners maintain that the FPAA was not issued in accordance with Code §6223(d)(2).  First, it is impossible for a notice partner to receive timely notice if the Tax Matters Partner has not timely received such notice or in fact has not received any notice at all.  Second, it specifically violates the notice rules of Code §6223 when a notice partner does not receive the notice of FPAA.  If such provisions of Code §6223(d)(2) have not been followed, Code §6231(b)(1)(D) and §6223(e) state that all partnership items become non-partnership items.  The adjustments originally made at the partnership level must then be applied at the individual partner level.
>
> To reiterate, Petitioners' contention is that by itself, the lack of mailing and/or the late mailing of the FPAA to the Tax Matters Partner automatically violates the notice requirements of Code §6223(d)(2).  [Record references omitted.]

Petitioners argue that this Court's opinion in <u>Genesis Oil & Gas, Ltd. v. Commissioner</u>, <u>supra</u>, does not resolve the issues raised in their motion to dismiss. Petitioners' brief states as follows:

> Petitioners are requesting that the Court define the impact of the lapsing of the Statute of Limitations in this case differently than this Court did in <u>Genesis</u>. This is because there is evidence that indicates minimal notification was not given to each partner about the Internal Revenue Service adjustments made.

As a preliminary matter, we must consider the first ground for petitioners' motion to dismiss, their contention that the notice of FPAA was not mailed to the tax matters partner. The mailing of a notice of FPAA to the tax matters partner is a prerequisite to the assessment and collection of a deficiency arising out of partnership items or affected items. <u>Clovis I v. Commissioner</u>, <u>supra</u>. Section 6225(a) provides that the Commissioner is foreclosed from assessing a deficiency attributable to any partnership item before 150 days after a notice of FPAA is mailed to the tax matters partner, or, if a proceeding is begun in this Court during the 150-day period, before the decision of the Court becomes final. If the Commissioner has not mailed a notice of FPAA to the tax matter partner with respect to the adjustments that are the subject of

a petition for readjustment, then the petition for readjustment must be dismissed for lack of jurisdiction. Clovis I v. Commissioner, 88 T.C. 980 (1987); Maxwell v. Commissioner, 87 T.C. at 789. Respondent bears the burden of proving that the notice of FPAA was mailed to the tax matters partner, as well as the date on which it was mailed. Cf. Coleman v. Commissioner, 94 T.C. 82, 90 (1990); Cataldo v. Commissioner, 60 T.C. 522, 524 (1973), affd. 499 F.2d 550 (2d Cir. 1974); August v. Commissioner, 54 T.C. 1535, 1537 (1970).

Based upon the record in this case, there can be no dispute about the fact that on January 28, 1991, respondent mailed duplicate notices of FPAA by certified mail to the street address listed on the partnership's 1983 return, one copy addressed to "Wayne H. Caldwell, Escrow" and a second copy, the generic notice of FPAA, addressed to "Tax Matters Partner c/o Wayne H. Caldwell Escrow". At trial, respondent introduced U.S. Postal Service Form 3877, which reflects the mailing of the duplicate notices of FPAA on January 28, 1991, and petitioners have stipulated that the generic notice of FPAA was mailed on that date. Form 3877 is highly probative evidence of the fact and date of mailing. United States v. Ahrens, 530 F.2d 781, 784 (8th Cir. 1976); Coleman v. Commissioner, supra at 90-91.

Petitioners' contention that the notice of FPAA was not sent to the tax matters partner is based upon the assertion that Mr. Denny, who held the largest profits interest in the partnership, was the tax matters partner pursuant to section 6231(a)(7)(B), and that Mr. Caldwell, who may have held himself out as the tax matters partner, was not the tax matters partner because he was never designated as such either by the Internal Revenue Service or by the partnership.

Petitioners assert that the notice of FPAA was not mailed to Mr. Denny, the tax matters partner. In order to prove that fact, they rely upon a stipulation set forth in the stipulation of facts filed in this case that "No FPAA was ever sent to Bill Denny in the capacity of Tax Matter [sic] Partner". They also rely on a stipulation set forth in the Rule 122 stipulation that "No FPAA was ever sent to Bill Denny whose address is 4333 Willow Lane, Dallas, Texas." Finally, they rely on Mr. Denny's testimony that he never received the notice of FPAA.

In advancing the contention that the notice of FPAA was not sent to the tax matters partner, petitioners fail to take into account the fact that respondent mailed the notice of FPAA not only to Mr. Caldwell but also to "Tax Matters Partner c/o Wayne H. Caldwell Escrow". The use of

such a generic notice of FPAA was suggested by Congress during its consideration of the partnership audit and litigation provisions in precisely the situation presented in this case; that is, where "the identity of the TMP may not be known to the Secretary". H. Conf. Rept. 97-760, at 601 (1982), 1982-2 C.B. 600, 663. The use of a generic notice of FPAA is authorized by the temporary regulations promulgated under section 6223, section 301.6223(a)-1T(a), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6783 (Mar. 5, 1987), and has been approved by this Court. Triangle Investors Ltd. Partnership v. Commissioner, 95 T.C. at 614; Chomp Associates v. Commissioner, 91 T.C. at 1072-1073; Barbados #7 Ltd. v. Commissioner, 92 T.C. 804, 807-808 (1989); Seneca, Ltd. v. Commissioner, 92 T.C. 363 (1989). Based upon the generic notice of FPAA, we find that respondent mailed the notice of FPAA to the tax matters partner on January 28, 1991. It is unnecessary for us to resolve the dispute over the identity of the tax matters partner in order to find that the notice of FPAA was mailed to the tax matters partner. Cf. Seneca, Ltd. v. Commissioner, supra.

Both the stipulation of facts and the Rule 122 stipulation state that the generic notice of FPAA was mailed by respondent on January 28, 1991. We find nothing

in either stipulation to preclude giving legal effect to that notice. The stipulation filed in this case that no notice of FPAA was mailed to Mr. Denny "in the capacity of Tax Matter [sic] Partner" reflects nothing more than what actually took place. Respondent mailed duplicate notices of FPAA to Mr. Caldwell and to the "Tax Matters Partner". Respondent did not mail a copy of the notice of FPAA specifically addressed to Mr. Denny as tax matters partner. Similarly, the Rule 122 stipulation states that "no FPAA was ever sent to Bill Denny". However, it does not state that Mr. Denny was the tax matters partner at that time. Petitioners argue that Mr. Denny was the tax matters partner, but respondent argues that Mr. Caldwell was the tax matters partner. We have made no finding about the identity of the tax matters partner, and none is necessary to resolve this case. See id. Furthermore, we note that the Rule 122 stipulation is contradicted by the FPAA Certified Mail Listing which states that the notice of FPAA was mailed to "Billy R & Beverly Denny, 4333 Willow Ln, Dallas, TX 75244-7450". We further note respondent's assertion that the phrase "in the capacity of Tax Matters Partner" was inadvertently omitted from the Rule 122 stipulation.

Before discussing the other grounds for petitioners' motion to dismiss, it is necessary to review the provisions on which petitioners rely, the notice provisions set forth in section 6223, and the period of limitations on assessments set forth in section 6229.  We start with the notice provisions.

As applied to partnerships with fewer than 100 partners, like the subject partnership, the unified audit and litigation procedures set forth in sections 6221 through 6233 require the Secretary of the Treasury or his delegate to mail to each partner notice of the beginning of an administrative proceeding at the partnership level, and notice of the final partnership administrative adjustment resulting from such a proceeding.  Secs. 6223(a), 7701(a)(11).  Section 6223 requires the Secretary to mail notice of the beginning of the administrative proceeding not later than 120 days before the day on which the notice of FPAA is mailed to the tax matters partner. Sec. 6223 (d)(1).  The statute requires the Secretary to mail the notice of FPAA to each partner not later than 60 days after the day on which the notice of FPAA was mailed to the tax matters partner.  Sec. 6223(d)(2).

In the event that the Secretary fails to mail either or both of the notices required by section 6223(a) to one

or more partners within the time period specified in section 6223(d), the statute provides a comprehensive remedy provision in section 6223(e).  Under the remedy provision, the effect of the Secretary's failure to provide timely notice depends upon whether the partnership proceeding is finished or is still going on at the time the Secretary mails "notice of the proceeding" to the notice partner.  Sec. 6223(e)(2) and (3).

In effect, each of the notice partners to whom a timely notice was not mailed is entitled by section 6223(e) to decide whether to treat his or her partnership items as nonpartnership items.  If the partnership proceeding is finished at the time the Secretary mails notice of the proceeding to the notice partner, the partnership items of the partner are treated as having become nonpartnership items as of the day the Secretary mailed the partner notice of the proceeding, unless the partner elects otherwise. Sec. 6223(e)(2); sec. 301.6223(e)-2T(a)(2), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6785 (Mar. 5, 1987). That is, the partnership items are treated as nonpartnership items unless the partner elects to take advantage of any adjustment, decision, or settlement agreement that is based upon the partnership proceeding. Sec. 6223(e)(2).  If the proceeding is still going on, the

partner is treated as a party to the proceeding and the partnership items are treated as partnership items, unless the partner elects to have them treated as nonpartnership items as of the day on which the Secretary mails the partner notice of the proceeding. Sec. 6223(e)(3); sec. 301.6223(e)-2T(b)(2), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6785 (Mar. 5, 1987). Each partner makes an independent election under section 6223(e). Thus, it is evident that this remedy provision is applied to each partner on an individual basis. Wind Energy Technology Associates III v. Commissioner, 94 T.C. at 790-791.

The remedy provision, section 6223(e), is one of four events described by section 6231(b)(1) under which partnership items of a partner become nonpartnership items. Section 6231(b)(1) prescribes the date on which the change will be deemed to take place for purposes of the unified audit and litigation provisions. In the case of section 6223(e), section 6231(b)(1)(D) provides that the date on which the change occurs for purpose of the unified audit and litigation procedures is the date on which the change occurs under section 6223(e); that is, "the day on which the Service mails the partner notice of proceeding." Sec. 301.6223(e)-2T(a)(2) and (b)(2), Temporary Proced. & Admin. Regs., supra.

We turn to the period of limitations on assessment and collection of the tax imposed by subtitle A of the Internal Revenue Code. Under the general rule set forth in section 6501, the Secretary is required to assess the tax within 3 years after the taxpayer's return is filed. Sec. 6501(a). In the case of the tax imposed on partnership items, however, section 6229 sets forth special rules to extend the period of limitations prescribed by section 6501. See sec. 6501(o)(2).

Section 6229(a) provides that, generally, the period of limitations for assessing the tax attributable to partnership items shall not expire before 3 years after the date on which the partnership return was filed, or, if later, the last day for filing such return. This period can be extended with respect to a particular partner by agreement entered into by the Secretary and the partner, or with respect to all partners by an agreement entered into by the Secretary and the tax matters partner or a person authorized by the partnership to enter into such an agreement. Sec. 6229(b). If the Secretary mails a notice of FPAA to the tax matters partner, section 6229(d) suspends the running of the period of limitations on assessment for the period during which an action can be brought to challenge the notice of FPAA in court and for 1

year thereafter.  Finally, section 6229(f) provides that, if one or more of the events described in section 6231(b) take place, under which partnership items are converted into nonpartnership items, and if the event takes place before the expiration of the period of limitations on assessment, then the period of limitations with respect to the tax on those items will not expire before 1 year after the conversion.

In substance, petitioners argue that their petition for readjustment must be dismissed and respondent must be foreclosed from assessing any tax attributable to the subject partnership items on two grounds.  As mentioned earlier, the first ground is that respondent failed to mail the notice of FPAA to the tax matters partner.  We have disposed of that contention above.  The second ground is that respondent failed to give petitioners the notice required by section 6223(a)(2) within the time required by section 6223(d)(2), with the result that their partnership items for 1983 became nonpartnership items, pursuant to the remedy provision set out in section 6223(e), and cannot be adjusted in this proceeding at the partnership level.

In support of their second ground, petitioners assert that the notice of FPAA was never mailed to the notice partners as required by section 6223(a)(2).  In further

support of that ground, petitioners assert that even if we find that the notice of FPAA was mailed to the notice partners, it was not mailed until after the expiration of the period of limitations on assessment and, thus, was not mailed within the time required by section 6223(d)(2). In effect, petitioners contend that section 6223(d)(2) incorporates the period of limitations on assessment set forth in section 6229 and that expiration of the period of limitations precludes timely notice under section 6223(d)(2) and, in effect, is one of the events described by section 6231(b)(1) under which partnership items become nonpartnership items.

We agree that if the Commissioner, as the Secretary's delegate, fails to mail the notice of FPAA to any notice partner within the time prescribed by section 6223(d)(2), and if the partnership level proceedings are finished at the time the Commissioner mails notice of the proceedings to the notice partner, then the partnership items of the notice partner are treated as nonpartnership items under section 6223(e)(2) unless that partner elects otherwise. In this case, however, as discussed below, we find no factual or legal basis on which to conclude that respondent failed to mail the notice of FPAA to notice partners as

required by section 6223(a)(2) within the time required by section 6223(d)(2).

The record contains sufficient evidence to find that the notice of FPAA was mailed to each notice partner on January 28, 1991. At trial, respondent introduced the testimony of Mr. Norstrud, the Appeals Officer, who described the general procedures used in respondent's Dallas office to mail notices of FPAA to a tax matters partner and notice partners, and described the steps that he took in this case to prepare the FPAA package, including the duplicate notices of FPAA, and to send the FPAA package to the Austin Compliance Center where the notices of FPAA were to be dated and mailed. Mr. Norstrud testified that in due course thereafter he received from the Austin Compliance Center copies of the duplicate notices of FPAA which had been stamped "January 28, 1991", and mailed to the tax matters partner. Mr. Norstrud also testified that he received from the Austin Compliance Center the "FPAA Certified Mail Listing A", described above, listing the name and address of each of the 27 notice partners to whom the notice of FPAA had also been mailed. Respondent introduced the FPAA Certified Mail Listing through the testimony of Mr. Norstrud and a representative of the Ogden Service Center who was the custodian of that document.

Finally, respondent introduced letters from Mr. Caldwell, Mr. Denny, and Mr. Nickerson, which were received in response to the notice of FPAA, and which corroborate the mailing of the notice of FPAA to the tax matters partner and the notice partners.

Petitioners raise a variety of questions regarding the admissibility and probative value of the FPAA Certified Mail Listing A. They argue that there was no proper foundation for the introduction of that document inasmuch as the individual who identified it at trial was an employee of the Ogden Service Center, rather than the Austin Compliance Center where the document was prepared, and he had no firsthand knowledge regarding who prepared the document, when it was prepared, or how it was prepared. Petitioners argue that the FPAA Certified Mail Listing does not prove the date of mailing of any of the letters on the list, and that respondent has not introduced "green cards" to show receipt of the notice of FPAA by Mr. Denny or any of the other partners, or U.S. Postal Service Forms 3849 to show that delivery was attempted. According to petitioners, respondent violated her own procedures, set forth in 5 Administration, Internal Revenue Manual (CCH), section 7(11)62.2(5), at 22,863-5, which require the use of U.S. Postal Service Form 3877(a) to prove certified

mailing.  Finally, petitioners note that there were 27 partners in the partnership and that the FPAA Certified Mail List shows that 29 notices of FPAA were sent in this case.  According to petitioners, this is an "indication of the unreliability of" the FPAA Certified Mail Listing. Petitioners argue:  "This one inconsistency is large enough to be sufficient to bar * * * [the FPAA Certified Mail Listing] as evidence as proof of mailing by itself."

Each of the questions raised by petitioners regarding the admissibility and probative value of the FPAA Certified Mail Listing is meritless.  Respondent introduced the subject document, not only through the testimony of a representative of the Ogden Service Center, but also through the testimony of Mr. Norstrud.  The representative of the Ogden Service Center stated that he was custodian of the FPAA Certified Mail Listing.  He explained that the Ogden Service Center had taken over the duties of the Austin Compliance Center and that the records of the Austin Compliance Center had been transferred to the Ogden Service Center.  He also described respondent's procedures for mailing the notices of FPAA to notice partners and stated that those procedures are set forth in the Internal Revenue Manual.  Mr. Norstrud also explained respondent's procedures for mailing notices of FPAA to notice partners

in respondent's Dallas, Texas, office, and he explained the steps taken to mail the notices of FPAA in this case, which were consistent with respondent's established procedures. The evidence is sufficient to prove respondent's procedures for mailing the notice of FPAA to notice partners, and to prove that those procedures were followed in this case. It is not necessary for respondent to introduce the testimony of other persons who recall each step in the process of mailing the notice of FPAA at issue. See generally Coleman v. Commissioner, 94 T.C. 82 (1990); Cataldo v. Commissioner, 60 T.C. 522 (1973); Dorsey v. Commissioner, T.C. Memo. 1993-182.

Petitioners' assertion that the use of the FPAA Certified Mail Listing was contrary to respondent's procedures is incorrect. The FPAA Certified Mail Listing is a three-part computer-generated form that is used by the Internal Revenue Service to document the mailing of notices of FPAA to notice partners. See 1 Audit, Internal Revenue Manual (CCH), sec. 4227.47, at 7233-20; Partnership Control System Handbook, 3 Audit, Internal Revenue Manual (CCH), sec. 524, at 8617, 8617-74 (hereinafter PCS Handbook). It is similar to U.S. Postal Service Form 3877 which is used to document the mailing of a notice of deficiency. See 5 Administration, Internal Revenue Manual

(CCH), sec. 7(11)62.2, at 22,863-5.  Respondent's procedures call for the preparation and use of an FPAA Certified Mail Listing, rather than U.S. Postal Service Form 3877, to document the fact and date of mailing of the notice of FPAA to notice partners.  Compare PCS Handbook, supra sec. 524 with 5 Administration, Internal Revenue Manual (CCH), sec. 7(11)62.2, at 22,863-5.

We also reject petitioners' argument that respondent should have introduced "green cards" to show receipt of the notice of FPAA by a notice partner, or U.S. Postal Service Forms 3849 to document attempted delivery of the notice.  Section 6223(a) provides that "the Secretary shall mail" the notices required by that section.  The statute does not require the use of certified mail.  Respondent's procedures require notices of FPAA to be mailed by certified mail, but there is nothing in respondent's procedures that calls for the use of a green card or return receipt.  Similarly, if respondent had introduced U.S. Postal Service Form 3849 to show attempted delivery of certified or registered mail with respect to the notice of FPAA mailed to one or more of the notice partners in this case, that would be further evidence of the mailing of the notice of FPAA.  However, the absence of U.S. Postal Service Form 3849 from the record does not reasonably

permit an inference that the notice of FPAA was not mailed to the notice partners.

We also reject petitioners' final point that the FPAA Certified Mail Listing is unreliable and should be excluded from evidence by reason of the fact that it records the mailing of 29 letters, whereas there were only 27 partners in the partnership. Petitioners fail to take note of the fact that the notice of FPAA was mailed to petitioners "Charles P. & Louetta J. Niven" at two different addresses, and that the notice of FPAA was also mailed to "Robert L. Jondele" at two different addresses.

Petitioners' final contention is that, as a matter of law, the expiration of the period of limitations on assessment, prescribed by section 6229, prior to the mailing of the notice of FPAA, made it impossible for respondent to mail the notice of FPAA to notice partners within the time required by section 6223(d)(2). Petitioners contend that, as a result of the expiration of the period of limitations, all of the partnership items of the notice partners were automatically converted to nonpartnership items under the remedy provision of section 6223(e). In effect, petitioners contend that the period of limitations on assessment set forth in section 6229 is

incorporated within section 6223(d)(2), the period for mailing the notice of FPAA to notice partners.

At the outset, we note that the above contention is based upon the factual premise, disputed by respondent, that the period of limitations had expired before January 28, 1991, when the notice of FPAA was mailed to the tax matters partner and notice partners. As mentioned above, petitioners assert that Mr. Denny, who held the largest profits interest in the partnership, was the tax matters partner. They argue that Mr. Caldwell had not been designated tax matters partner by either the partnership or the Internal Revenue Service, and that he had no authority to enter into an agreement to extend the period of limitations on behalf of the partnership by executing Form 872-O. Accordingly, petitioners argue that the period of limitations on assessment expired on April 15, 1987, 3 years after the date on which the partnership's 1983 return was filed, pursuant to the general rule of section 6229(a). Respondent argues the opposite; i.e., that Mr. Caldwell was the tax matters partner or had authority to bind the partnership, that he executed a valid agreement to extend the period of limitations on assessment on Form 872-O, and that the period of limitations had not expired

on January 28, 1991, when respondent mailed notices of FPAA to the tax matters partner and the notice partners.

For the reasons discussed below, we reject petitioners' legal conclusion that the expiration of the period of limitations on assessment precludes respondent from mailing notices of FPAA to the notice partners within the time required by section 6223(d)(2).  In deciding this case, therefore, it is unnecessary to resolve the factual dispute between the parties about whether the period of limitations had actually expired before the notice of FPAA was mailed to notice partners.

Petitioners' position is that the period of limitations on assessment set forth in section 6229 is incorporated in section 6223(d)(2), the period during which the statute requires the Secretary to mail the notice of FPAA to notice partners.  Section 6223(d)(2) provides as follows:

> SEC. 6223(d). Period for Mailing Notice.--
>
>     \*   \*   \*   \*   \*   \*   \*
>
> (2) Notice of final partnership
> administrative adjustment.--
>
> The Secretary shall mail the notice specified in
> paragraph (2) of subsection (a) to each partner
> entitled  to such notice not later than the 60th
> day after the day on which the notice specified

in paragraph (2) was mailed to the tax matters partner.

Section 6223(d)(2) states that the notice of FPAA should be mailed to each notice partner not later than 60 days after it was mailed to the tax matters partner. Section 6223(d)(2) says nothing about the period of limitations, and there is no reason that it should. Section 6226(a) gives the tax matters partner 90 days in which to file a petition for readjustment, and section 6226(b) gives notice partners 60 days thereafter in which to file a petition for readjustment. Thus, the effect of section 6223(d)(2), which requires the Commissioner to mail the notice of FPAA to notice partners not later than 60 days after it was mailed to the tax matters partner, is to give notice partners at least 90 days in which to consider filing a petition for readjustment under section 6226(b). See secs. 6223(d)(2), 6226(b)(1).

Petitioners' position is that the expiration of the period of limitations precludes issuance of a timely notice under section 6223(d)(2) and automatically invokes the remedy provision set forth in section 6223(e) under which partnership items are converted to nonpartnership items. Thus, under petitioners' theory, the expiration of the period of limitations under section 6229 automatically

causes the conversion of partnership items to non-partnership items, pursuant to section 6223(e), and is one of the events described by section 6231(b). To the contrary, however, it is evident from section 6226(d), quoted above, that the expiration of the period of limitations is not one of the events described by section 6231(b) under which partnership items are converted to nonpartnership items. This is evident from the fact that the period of limitations on assessment is referred to in section 6226(d)(1)(B), whereas the events under which partnership items become nonpartnership items are referred to in section 6226(d)(1)(A).

Finally, we must say a word about the position of the other parties to this case, participating partners Wayne H. Caldwell and John P. Haddock, Jr., and intervening partner Bill R. Denny. Intervening partner Denny has joined the pleadings filed by petitioners. He has presented nothing other than the arguments advanced by petitioners, discussed above. Participating partner John P. Haddock, Jr., did not appear at the hearing and has not filed any pleadings.

The brief filed by Mr. Caldwell adopts the arguments of petitioners, discussed above. In considering those arguments, we note that it is doubtful that the factual assertions underlying petitioners' arguments apply to

Mr. Caldwell.  First, it is undisputed that Mr. Caldwell signed an open-ended extension of the period of limitations on assessment on Form 872-O.  Even if Mr. Caldwell was not the tax matters partner or authorized by the partnership to enter into such an agreement, as petitioners contend, the agreement on Form 872-O executed by Mr. Caldwell would seem to have the effect of extending the period of limitations in Mr. Caldwell's individual case.  See sec. 6229(b)(1)(A).  Mr. Caldwell does not address this issue.  Second, it is undisputed that the notice of FPAA was sent to Mr. Caldwell and was received by him before the expiration of the period of limitations, as extended by the agreement on Form 872-O.

In order to bolster his argument that the period of limitations had expired, Mr. Caldwell argues that the agreement to extend the period of limitations on Form 872-O was not valid because the Appeals officer who signed the agreement on behalf of respondent, Mr. Norstrud, did not have authority to do so.  We need not resolve this issue.  As discussed above, it is unnecessary to find whether the period of limitations had actually expired before the notice of FPAA was mailed to notice partners.  This is because we reject petitioners' contention that the period of limitations on assessment is incorporated within the

period for mailing the notice of FPAA to notice partners, prescribed by section 6223(d)(2).

For reasons discussed above,

<u>An order and order of dismissal will be entered granting respondent's motion to dismiss for lack of jurisdiction and denying petitioners' cross-motion</u>.